FILED
2009 Sep-21  PM 02:41
U.S. DISTRICT COURT
N.D. OF ALABAMA

# IN THE UNITED STATES DISTRICT COURT
## FOR THE NORTHERN DISTRICT OF ALABAMA
## NORTHEASTERN DIVISION

| | | |
|---|---|---|
| **ROGER LANKFORD,** | } | |
| | } | |
| **Plaintiff,** | } | |
| | } | |
| **v.** | } | **Case No.: 5:08-CV-01092-RDP** |
| | } | |
| **MICHAEL J. ASTRUE, Commissioner** | } | |
| **of Social Security,** | } | |
| | } | |
| **Defendant.** | } | |

## MEMORANDUM OF OPINION

Plaintiff Roger Lankford brings this action pursuant to 42 U.S.C. § 405(g) of the Social Security Act ("the Act"), seeking review of the decision of the Commissioner of Social Security ("Commissioner") denying his application for a period of disability and disability insurance benefits ("DIB"). For the reasons outlined below, the court finds that the decision of the Commissioner is due to be affirmed because it is supported by substantial evidence and the proper legal standards were applied.

## I.     Procedural History

Plaintiff was born March 19, 1965 and has a high school education. (Tr. 41, 58). Plaintiff worked in a grocery store as a stock clerk, grocery clerk, and store manager, respectively, from May 1981 until August 2005. (Tr. 68-69, 353). Plaintiff alleges he has been unable to engage in substantial gainful activity since August 8, 2005, due to a heart condition, high blood pressure, coronary artery disease, hyperlipodemia, and anxiety. (Tr. 32, 68).

Plaintiff filed an application for Social Security benefits on August 29, 2005. (Tr. 41). Plaintiff's application was denied initially and also upon review. (Tr. 25, 27). Plaintiff timely

requested a hearing before an Administrative Law Judge ("ALJ"). (Tr. 32). A hearing was scheduled and held on February 21, 2007 before ALJ Dan Grady. (Tr. 350-84).

In his May 4, 2007 hearing decision, the ALJ found Plaintiff does not have an impairment or combination of impairments that meets or medically equals one of the listed impairments of the Act. (Tr. 18). The ALJ stated that the medical evidence establishes that Plaintiff suffers from severe impairments of status post myocardial infarction, hypertension, coronary artery disease status post two stents, systolic congestive heart failure, depression and generalized anxiety disorder, which preclude him from performing past work as he retains the residual functional capacity for no more than sedentary work on a regular or continuing basis. (Tr. 17-21).

Plaintiff filed a request for review of the hearing decision on May 25, 2007. (Tr. 11). On April 25, 2008, a denial of the request was issued by the Appeals Council. (Tr. 4-7). That action made the ALJ's decision the final decision of the Commissioner, and therefore a proper subject for this court's review. This action for judicial review was filed by and through counsel on November 5, 2008. (Doc. #1).

Plaintiff was treated for heart problems prior to his alleged disability onset date of August 8, 2005. (Tr. 117-72). On June 29, 2003 Plaintiff was admitted to the Decatur General Hospital emergency room complaining of chest pain. (Tr. 117-33). Plaintiff was given emergency cardiac catherization with angioplasty and stenting, and a balloon pump was inserted into his heart. (Tr. 150-52). Plaintiff was then transferred to the Huntsville Hospital. (*Id.*). Plaintiff was discharged on July 2, 2003. (Tr. 169-72).

Plaintiff returned to Huntsville Hospital on July 18, 2003, again complaining of chest pain he was experiencing, off and on, for a day. (Tr. 173). The attending physician, Dr. William C. Robbins,

noted Plaintiff's pain was similar to his previously reported pain. (*Id.*).  Plaintiff was admitted to the Huntsville Hospital and discharged the next day with a diagnosis of: (1) coronary artery disease status post stent to the left anterior descending on 06/29/03; (2) atypical chest pain; (3) hyperlipidemia; (4) peptic ulcer disease; and (5) depression. (*Id.*).  Follow-up notes from Dr. M.A. Khan indicate that Plaintiff was admitted to the hospital by Dr. Robbins with some very atypical symptoms, "he complains of some upper back pain.  No chest pain and no arm pain." (Tr. 221).  Additionally, Dr. Khan makes mention that he had performed a Cardiolite scan on Plaintiff, the results of which indicated that Plaintiff is able to walk for eight minutes and did not have any complaints of chest pain during exercise. (*Id.*).  The EKG part of the test was electrically negative, and Plaintiff achieved a target heart rate. (*Id.*).  The Cardiolite part of the scan showed scar tissue involving the distal anterior wall and apex and anteroseptal wall. (*Id.*).  There was no reversible ischemia. (*Id.*).  On visual estimation, the ejection fraction was in the range of 30 to 35%. (*Id.*).  Dr. Khan wrote that he did not believe Plaintiff was developing any restonosis in the stented LAD site and was sent home on the same medicines. (*Id.*).

Thereafter, Plaintiff began visiting the Heart Center in Huntsville. (Tr. 210-25).  He saw Dr. Khan on July 19, 2003, when the doctor  reported Plaintiff's echocardiogram was negative and that he achieved a target heart rate. (Tr. 221).  On July 29, 2003, Plaintiff saw Dr. Sean P. Groark who stated Plaintiff was doing "fairly well." (Tr. 220).  Dr. Groark placed Plaintiff on a six month regimen of Coumadin and recommended six weeks of cardiac rehab before returning to work. (*Id.*).

Plaintiff returned to Huntsville Hospital on October 21, 2003 complaining of chest pain. (Tr. 189).  His discharge diagnosis was: (1) chest pain secondary to hiatal hernia and gastric erosions; (2) known coronary artery disease status post myocardial infarction; (3) status post cardiac catherization;

3

(4) hypertension, (5) hypercholesterolemia; (6) tobacco abuse; and (7) chronic anticoagulation secondary to left ventricular dysfunction. (*Id.*). Plaintiff had a cardiac catherization performed the next day in which Dr. Charles Randy Burns stated Plaintiff's chest pain was most likely gastrointestinal related. (Tr. 191).

Plaintiff returned to the Heart Center on January 20, 2004 and saw Dr. Groark. (Tr. 215-17). Dr. Groark opined that Plaintiff was "doing just fine from a cardiac standpoint," and that he was considering taking Plaintiff off Coumadin. (*Id.*). On July 26, 2004, Dr. Patricia Gurczak of the Heart Center performed a cardiolite stress test on Plaintiff. (Tr. 212-14). She noted that Plaintiff was actively abusing tobacco. (Tr. 213). Dr. Gurczak documented the results of the stress test a week later, describing Plaintiff's test as "low risk," but thought a repeat left heart catherization may be necessary to reassure Plaintiff and the doctors that Plaintiff does not have recurrent coronary heart disease. (Tr. 211). The record does not indicate whether a repeat catherization was ever performed.

From August 2003 to December 2005, Plaintiff regularly saw his treating physician, Dr. Kirk Jackson. (Tr. 243-66). During this time period, Dr. Jackson noted only normalcy in regards to Plaintiff's cardiac health. (*Id.*). At a January 24, 2005 visit, Plaintiff reported mental fatigue and ongoing chest pain to Dr. Jackson. (Tr. 249). Dr. Jackson reported Plaintiff's heart, lungs, neck and abdomen were normal. (Tr. 248). During a visit on May 16, 2005, Plaintiff informed Dr. Jackson that he was planning to apply for disability due to increased stress at his job. (Tr. 248).

On January 30, 2006, Dr. Jackson administered a physical medical source opinion and clinical assessment of pain on behalf of Plaintiff. (Tr. 239-42). Dr. Jackson opined that Plaintiff could stand for less than two hours in an eight hour day, walk for less than two hours in an eight hour day, and sit for an unlimited amount of time. (Tr. 239). Dr. Jackson also stated that Plaintiff could lift and/or

4

carry up to twenty pounds occasionally.  (*Id.*).  In his clinical assessment of pain, Dr. Jackson opined Plaintiff's pain was present to such a degree as to be distracting to adequate performance of daily activities or work, and physical activity would increase pain to such a degree that bed rest and/or medication would be necessary.  (Tr. 241).  He further noted that Plaintiff's pain was totally restricting, and thus, he would be unable to function at a productive level of work.  (Tr. 242).   An echocardiogram performed on June 8, 2006 revealed no disabling conditions.  (Tr. 331).

On June 21, 2006, Plaintiff returned to Dr. Jackson for his six month check-up and reported no chest pain, but reported problems with rectal bleeding and sinusitis. (Tr. 327-29).  Dr. Jackson ordered a colonoscopy that revealed hemorrhoids, but was otherwise normal. (Tr. 325).  A paranasal sinuses exam administered July 3, 2006 revealed chronic sinusitis.  (Tr. 326).  During this visit, Dr. Jackson reported Plaintiff's heart was normal.  (Tr. 327).

On October 4, 2006, Plaintiff saw Dr. R. Scott Hellard on referral from Dr. Jackson for an initial psychiatric evaluation.  (Tr. 340-42).  Plaintiff reported increased stress at his job over the past year.  (Tr. 340).  Additionally, Plaintiff told Dr. Hellard that Dr. Jackson had taken him off work in August 2005 for disability due to exhaustion, fatigue, and depression.  (Tr. 340).  Plaintiff reported that on a daily basis he bathes, cleans, cooks occasionally, and leaves the house to run errands not more than three times a week. (Tr. 341).  Dr. Hellard diagnosed Plaintiff with major depressive disorder and generalized anxiety disorder.  (*Id.*).  Dr. Hellard also assessed Plaintiff's Global Assessment of Functioning ("GAF") score as 55.  (Tr. 342).

On February 20, 2007, Dr. Hellard completed a mental medical source opinion form on Plaintiff.  (Tr. 305-06).  Dr. Hellard opined Plaintiff has mild restrictions in his ability to respond appropriately to supervisors, respond appropriately to co-workers, use judgment in simple, one or two

step, work-related decisions, as well as understand, remember, and carry out simple, one or two-step, instructions.  (Tr. 305).  Dr. Hellard also found Plaintiff has moderate restrictions in his ability to respond appropriately to customers or other members of the general public, use judgment in detailed or complex work-related decisions, and understand, remember, and carry out detailed or complex instructions.  (*Id.*).  Additionally, Dr. Hellard opined that Plaintiff has marked restrictions in his ability to deal with changes in a routine work setting, respond to customary work pressures, maintain attention, concentration or pace for periods of at least two hours, and maintain social functioning. (Tr. 306-06).  Dr. Hellard further noted that Plaintiff is unable to stay on task and is socially isolated, with no contact other than that which he has with his daughter.  (*Id.*).

At the February 21, 2007 hearing held in front of ALJ Grady, Plaintiff testified that he spends two to three hours a day on his feet and can walk up to one-quarter mile before becoming short of breath.  (Tr. 371-72).  Plaintiff further testified that he reclines for the remainder of the day that he is not standing. (*Id.*). Plaintiff reported that his daily activities include light chores, such as laundry, cooking and housework, as well as grocery shopping and short drives.  (Tr. 373-74).  Plaintiff also stated that he had been going to the gym three to four days a week for the past year, and walking on the treadmill for 30 minutes at a time.  (Tr. 378).

## II.    ALJ Decision

Determination of disability under the Act requires a five-step analysis.  *See* 20 C.F.R. § 404.1 *et. seq.*  First, the Commissioner determines whether the claimant is working.  Second, the Commissioner determines whether the claimant has an impairment which prevents the performance of basic work activities.  Third, the Commissioner determines whether claimant's impairment meets or equals an impairment listed in Appendix 1 of Part 404 of the Regulations.  Fourth, the

Commissioner determines whether the claimant's RFC can meet the physical and mental demands of past work. Finally, the Commissioner determines whether the claimant's age, education, and past work experience prevent the performance of any other work. In making a final determination, the Commissioner will use the Medical-Vocational Guidelines in Appendix 2 of Part 404 of the Regulations when all of the claimant's vocational factors and RFC are the same as the criteria listed in the Appendix. If the Commissioner finds that the claimant is disabled or not disabled at any step in this procedure, the Commissioner will provide no further review of the claim.

The court recognizes that "the ultimate burden of proving disability is on the claimant" and that the "claimant must establish a *prima facie* case by demonstrating that he can no longer perform his former employment." *Freeman v. Schweiker*, 681 F.2d 727, 729 (11th Cir. 1982) (other citations omitted). Once a claimant shows that he can no longer perform his past employment, "the burden then shifts to the [Commissioner] to establish that the claimant can perform other substantial gainful employment." *Id.*

The ALJ found that Plaintiff has not engaged in substantial gainful activity since August 8, 2005, the alleged onset date of disability. (Tr. 17). The ALJ determined that Plaintiff has the following severe impairments: status post myocardial infarction, hypertension, coronary artery disease status post two stents, systolic congestive heart failure, depression, and generalized anxiety disorder. (Tr. 17). The ALJ also determined that Plaintiff's impairments do not meet or equal (either singularly or in combination) any impairment listed in the Act. (Tr. 18). According to the ALJ, Plaintiff's impairments result in moderate restriction of daily activities and moderate difficulties in maintaining social functioning. (*Id.*). Furthermore, the ALJ determined Plaintiff's impairments cause no more than moderate deficiencies in concentration, persistence, and pace, and have never resulted in

7

episodes of deterioration or decompensation in work or work-like settings. (*Id.*). It was the ALJ's finding that Plaintiff retains the RFC to perform the exertional demands of at least sedentary work with no driving, working around moving machinery, at open heights, or on ladders, and would have no more than moderate mental limitations in each area of functioning, and should have only casual contact with the public and with co-workers. (*Id.*).

During the hearing, the ALJ called a vocational expert ("VE") to testify who was familiar with Plaintiff's background. (Tr. 381-83). The ALJ first asked if Plaintiff's limitations would preclude his past work. (Tr. 382). The VE answered affirmatively. (*Id.*). When asked to consider Plaintiff's age, education, work experience, and a vocational level of at least sedentary work, the VE testified that Plaintiff could find work as a sorter, inspector, or assembler. (Tr. 381-82). The VE stated in Alabama there are roughly 600 sorter jobs, 1,100 inspector jobs, and 700 jobs as a final assembler. (Tr. 382).

## III.     Plaintiff's Argument for Remand or Reversal

Plaintiff seeks to have the ALJ's decision reversed, or in the alternative, remanded for further consideration. (Doc. 9 at 10). Plaintiff argues that the ALJ failed to properly evaluate the credibility of his complaints of pain consistent with Eleventh Circuit law.

## IV.     Standard of Review

The only issues before this court are whether the record reveals substantial evidence to sustain the ALJ's decision, *see* 42 U.S.C. § 405(g); *Walden v. Schweiker*, 672 F.2d 835, 838 (11th Cir. 1982), and whether the correct legal standards were applied. *See Lamb v. Bowen*, 847 F.2d 698, 701 (11th Cir. 1988); *Chester v. Bowen*, 792 F.2d 129, 131 (11th Cir. 1986). Title 42, United States Code, Sections 405(g) and 1383(c) mandate that the Commissioner's findings are conclusive if supported

by "substantial evidence." *Martin v. Sullivan*, 894 F.2d 1520, 1529 (11th Cir.1990). The district court may not reconsider the facts, reevaluate the evidence, or substitute its judgment for that of the Commissioner; instead, it must review the final decision as a whole and determine if the decision is reasonable and supported by substantial evidence. *See id.* (*citing Bloodsworth v. Heckler*, 703 F.2d 1233, 1239 (11th Cir. 1983)).

Substantial evidence falls somewhere between a scintilla and a preponderance of evidence; "[i]t is such relevant evidence as a reasonable person would accept as adequate to support a conclusion." *Martin*, 894 F.2d at 1529 (*quoting Bloodsworth*, 703 F.2d at 1239) (other citations omitted). If supported by substantial evidence, the Commissioner's factual findings must be affirmed even if the evidence preponderates against the Commissioner's findings. *See Martin*, 894 F.2d at 1529. While the court acknowledges that judicial review of the ALJ's findings is limited in scope, the court also notes that review "does not yield automatic affirmance." *Lamb*, 847 F.2d at 701.

V.    **Discussion**

In light of the legal standards that apply in this case, the court rejects Plaintiff's arguments for remand and/or reversal. For the reasons outlined below, the court finds that the ALJ properly evaluated the evidence of record and applied the proper legal standards.

A.    **The ALJ's Decision is Supported By Substantial Evidence**

Plaintiff argues that the ALJ failed to properly credit Plaintiff's testimony and did not give sufficient weight to the opinion of his treating physician, Dr. Kirk Jackson. Plaintiff contends that the ALJ focused solely on the aspects of Dr. Jackson's treatment notes which support the ALJ's determination that Plaintiff was not disabled, thereby failing to give sufficient weight to Dr. Jackson's opinion as a whole.

9

On January 30, 2006, Dr. Jackson completed a medical source opinion and clinical assessment of pain on behalf of Plaintiff. (Tr. 239-42). Dr. Jackson opined that Plaintiff could stand for less than two hours in an eight hour day, walk for less than two hours in an eight hour day, and sit for an unlimited amount of time. (Tr. 239). Dr. Jackson also opined that Plaintiff's pain is present to such an extent as to be distracting to adequate performance of daily activities or work. (Tr. 241). Furthermore, Dr. Jackson noted that any physical activity would increase Plaintiff's pain to such an extent that bed rest and/or medication is necessary. (Tr. 241). Dr. Jackson stated that Plaintiff would be totally restricted and thus unable to function at a productive level of work due to the pain he experiences. (Tr. 242).

Plaintiff's RFC, as determined by the ALJ, is consistent with the physical functional abilities reported by Dr. Jackson. Dr. Jackson's assessment of Plaintiff's subjective complaints is inconsistent with his own treatment notes. Furthermore, after Plaintiff's heart attack in 2003, Dr Jackson reported Plaintiff's cardiovascular status was normal with essentially no symptoms until May 2005.[1] (Tr. 249-65). Plaintiff indicated he was having chest pain due to increased stress from his job, but after he quit his job, no further cardiac symptoms were reported to Dr. Jackson. (Tr. 244-48)

Plaintiff also argues that the ALJ did not give sufficient weight to the opinion of his treating psychiatrist, Dr. R. Scott Hellard. Dr. Hellard's records contradict his opinion and is more in line with Plaintiff's subjective complaints. Plaintiff originally saw Dr. Hellard on referral by Dr. Jackson. (Tr. 310). Dr. Hellard diagnosed Plaintiff with major depressive disorder and generalized anxiety disorder. (Tr. 311). Dr. Hellard's diagnosis was based on Plaintiff's report of occasional periods of

---

[1]Plaintiff reported chest pain and shortness of breath during a visit in November 2004 when he was diagnosed with the flu, but here was no mention of these symptoms in his subsequent January 2005 visit. (Tr. 249-50).

depression, occasional irritability, poor energy level and fatigue, poor concentration with forgetfulness and distractability, diminished interest in activities, feelings of guilt, occasional feelings of uselessness, occasional feelings of hopelessness, anxiety, decreased libido, and chronic ruminations. (Tr. 310).  Dr. Hellard assessed Plaintiff's GAF score as 55.  (Tr. 312). On Plaintiff's second visit to Dr. Hellard, his condition neither improved nor diminished; Plaintiff remained fatigued, depressed, and unable to concentrate.  (Tr. 309).  Plaintiff reported to Dr. Hellard that his aunt had passed away and that he had recently been divorced from his wife after a year of marriage.  (Tr. 309-10).  Plaintiff also reported to Dr. Hellard on November 2, 2006, that his job had been terminated the end of September, although he represented to the ALJ that he left his job on August 8, 2005 due to disability. (Tr. 309, 354).  Dr. Hellard noted Plaintiff was still battling fatigue and depression at this juncture. (Tr. 309).  From January 9, 2007 until March 9, 2007, Dr. Hellard's notes remained the same regarding Plaintiff's symptoms. (Tr. 344-45). On April 11, 2007, Dr. Hellard noted that Plaintiff was "more tired, more depressed, and more unmotivated lately with ongoing anxiety and isolation." (Tr. 344).

Plaintiff points out that Dr. Hellard had made a notation during several visits that Plaintiff's symptoms "remain disabling."  (Tr. 309).  According to the Eleventh Circuit, "[d]isability is determined by the effect an impairment has on the claimant's ability to work, rather than the diagnosis of an impairment itself." *Hale v. Bowen,* 831 F.2d 1007 (11th Cir. 1987), *citing* 42 U.S.C. § 423(d)(1)(A).

Based on the record before it, the court finds that the ALJ properly considered and weighed the opinions of both Dr. Jackson and Dr. Hellard. Plaintiff's physical impairments cause no more than moderate deficiencies in concentration, persistence, and pace.  ALJ Grady noted that he gave great

weight to the objective treatment notes of Dr. Jackson, which indicated Plaintiff had normal heart function from 2003 up until the hearing. (Tr. 21). The ALJ also correctly specified that he gave little weight to Dr. Jackson's assessment because it was not supported by his objective treatment notes that were made before Plaintiff told him he planned to apply for disability. (Tr. 21). The ALJ also stated that he gave little weight to the assessment of Dr. Hellard because it was not supported by objective medical evidence. (Tr. 21). Although Plaintiff suffers from depression, the evidence does not show that his condition is disabling or sufficient to impair his ability to work, only that he prefers to be isolated from other people. The ALJ did take into consideration Dr. Hellard's opinion that Plaintiff has difficulty working with others and addressed that in his findings. (Tr. 381). When eliciting testimony from the VE, the ALJ instructed her to consider Plaintiff's mental limitations and keep contact with coworkers and the general public at a casual level when making her determination. (Tr. 381). As a result, the VE stated that Plaintiff would be able to find sedentary work as a sorter, inspector, or final assembler. (Tr. 382). The ALJ's findings were supported by substantial evidence.

**B.     The ALJ Properly Applied the Eleventh Circuit Pain Standard**

Additionally, Plaintiff argues that the ALJ did not articulate his reasons for failing to credit Plaintiff's pain testimony, and in doing so failed to properly apply the Eleventh Circuit's pain standard. The court disagrees.

First, Plaintiff's complaints of pain are inconsistent with Dr. Jackson's treatment notes. This conclusion is supported by the fact that after Plaintiff's heart attack in 2003, his cardiovascular status was normal with essentially no symptoms until May 2005. Furthermore, Plaintiff's statements regarding his activities were inconsistent with his allegations of disabling pain. Plaintiff testified to the ALJ that his daily activities include light chores, such as laundry, cooking and housework, grocery

shopping, driving short distances, in addition to going to the gym three to four days a week and getting on the treadmill for 30 minutes at a time.  (Tr. 378).

The Eleventh Circuit has outlined a three-part standard for pain that ALJs are to use when deciding the level of credibility to give to a claimant's complaints of pain. The test requires (1) an underlying medical problem, and (2) objective evidence that confirms severe pain from it, or (3) the condition is so severe that it could be expected to be painful. *Ortega v. Gunter,* 933 F.Supp 1071, 1075-76 (S.D. Fla 1996), citing *Holt v. Sullivan,* 921 F2d 1221, 1223 (11th Cir, 1991).

In addition to applying the Eleventh Circuit pain standard, the Social Security Rulings ("SSR") outline steps that an ALJ must follow when determining the credibility of an individual's subjective complaints.  Social Security Ruling 96-7p requires that the ALJ first consider whether there is an underlying medically determinable impairment that could reasonably be expected to produce the claimant's pain or symptoms.  SSR 96-7P, 1996 WL 374186 (S.S.A.).  The ALJ must then consider whether the condition could reasonably be expected to produce the individual's symptoms and must evaluate the intensity, persistence or functionally limiting effects of these symptoms to determine the extent to which the symptoms limit the individuals ability to do basic work activities.  *Id.*  Whenever the individual's statements about the intensity, persistence, or functionally limiting effects of pain or other symptoms are not substantiated by objective medical evidence, the adjudicator must make a finding on the credibility of the individual's statements based on a consideration of the entire case record.  *Id.*

In the present case, the ALJ found that Plaintiff does suffer from a medically determinable impairment which could reasonably be expected to produce pain. However, given Plaintiff's testimony about his daily activities, including visiting the gym several times a week, the ALJ

13

determined that Plaintiff's subjective complaints are not supported by his own testimony, nor by the medical records submitted by his physician Dr. Jackson.  In *Rease v. Barnhart*, 422 F.Supp.2d 1334, 1369 (N.D.Ga., 2006), the court held that the ALJ's determination that the claimant was not fully credible as to the severity of his pain was supported by substantial evidence, stating, "even though the preponderance of the medical evidence may substantiate the [plaintiff's] allegation."  Based on the evidence of the present case, Plaintiff has failed to present objective medical evidence to support his subjective complaints of pain.  The ALJ applied the correct legal standards and there is substantial evidence in the record to support the ALJ's findings regarding Plaintiff's subjective complaints of disabling pain.

## VI.    Conclusion

For the reasons stated above, the court concludes that the ALJ's determination that Plaintiff is not disabled is supported by substantial evidence and the proper legal standards were applied in reaching this determination. The Commissioner's final decision is due to be affirmed and a separate order in accordance with this memorandum of opinion will be entered.

**DONE** and **ORDERED** this _____21st_____ day of September, 2009.

_____
**R. DAVID PROCTOR**
UNITED STATES DISTRICT JUDGE